## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| AMY ELIZABETH LORDAN,<br><br>                    Plaintiff,<br><br>      v.<br><br>DELAWARE TITLE LOANS, INC.;<br><br>PREDATOR RECOVERY AND TOWING,<br>LLC,<br>               Defendants. | NO.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

### I. Jurisdiction

1.    Federal jurisdiction over this complaint arises under 15 U.S.C. § 1692k and 18 U.S.C. § 1964 (RICO).  Venue is appropriate in the District of Delaware where the plaintiff resides and some of the acts alleged in the complaint occurred.

### II. Parties

2.    AMY ELIZABETH LORDAN is, and at all times herein, was an individual residing at 17442 Taramino Pl., Lewes, DE 19958 and currently residing at 106 Beebe Ave., Lewes DE 19958.

3.    DELAWARE TITLE LOANS, INC. ("DTL") is a corporate entity believed to be chartered in the state of Delaware with an office at 1812 Marsh Rd., Suite #6, Wilmington, DE 19810 and is in the business of Title loan lending.

4.    Defendant, PREDATOR RECOVERY AND TOWING, LLC ("PREDATOR") is a limited liability corporation regularly engaged in the business of debt collection and

automobile repossession in the Commonwealth of Pennsylvania with a principal office located at 31531 Jestice Farm Rd, Laurel, DE 19956.

5.      At the time the aforementioned defendants engaged in the collection and repossession activities described herein, PREDATOR was a debt collector as defined by 15 U.S.C. §1692a(6) insofar as Defendant:

    a) uses a tow vehicle as an instrumentality of interstate commerce in its business the principal purpose of which is the enforcement of security interest;

    b) breached the peace to effectuate a repossession and, in so doing, lost any present right to the collateral securing plaintiff's debt.

### III. Factual Allegations

6.      Prior to the events described herein, plaintiff owned with clear title a 2009 Jeep Wrangler that was titled, registered, and licensed in Delaware.

7.      Plaintiff entered into an auto title loan with DTL on or about August 31, 2022.

8.      Beginning in August 31, 2022, DTL entered into a loan agreement with Plaintiff.

9.      In connection therewith, Plaintiff executed an electronic payment authorization form in favor of DTL to withdraw her monthly payments towards the loan.

10.     DTL failed to withdraw the payments from Plaintiff's account when due.

11.     Having created a default artificially, DTL sought to repossess her vehicle.

12.     PREDATOR, acting of its own free will, agreed to work for DTL to repossess the plaintiff's vehicle.

13.     On or about October 6, 2022, PREDATOR came to plaintiff's home to repossess the vehicle.

14.     Plaintiff protested to PREDATOR prior to it hooking the vehicle that DTL had failed to withdraw her payments from her bank account and that her loan was not in default and should not be repossessed.

15.     PREDATOR ignored Plaintiff's protestations.

16.     During the course of the aforesaid repossession, plaintiff placed herself between the tow truck and her vehicle to prevent it being towed but PREDATOR, ignoring any potential danger to Plaintiff, commenced hooking the vehicle to the tow truck forcing her to extricate herself from between the vehicles to avoid being harmed.

17.     Defendants have not returned the vehicle and, upon information and belief, has sold the vehicle at auction.

18.     The subject repossession was an involuntary repossession.

19.     Defendant GM contracted with and hired the Repo Defendants to repossess or to arrange for the repossession of vehicles in connection with which it claimed a secured interest.

20.     Upon information and belief, Defendant DTL hired PREDATOR on a contingency basis, meaning that PREDATOR would only get paid for an involuntary repossession where the vehicle is actually taken from the vehicle owner.

21.     PREDATOR acted as DTL's agent at all times relevant.

22.     As a result of the foregoing events, plaintiff suffered harm consisting of the loss of her motor vehicle, the loss of her personal property in the vehicle, the expenditure of funds on alternative transportation, and the accompanying emotional distress of having her vehicle repossessed, including but not limited to shame, humiliation, frustration, and anger.

**COUNT I – Violations of the FDCPA**

3

**Plaintiff v. PREDATOR**

23.     The allegations above are re-alleged and incorporated herein by reference.

24.     At all times relevant hereto, PREDATOR was attempting to collect an alleged debt incurred for personal, family or household purposes and is a "debt" as defined by 15 U.S.C. § 1692a(5).

25.     Defendant, by its conduct as described above in repossessing a vehicle premised upon an unlawful loan and causing other damages to plaintiff by deprivation of her vehicle thereby, violated the FDCPA as follows:

    a)  §1692f(1) by towing the vehicle in a commercially unreasonable manner in connection with the repossession which is not permitted by law;

    b)  §1692f(6) by towing the vehicle in a commercially unreasonable manner in connection with the repossession unlawfully repossessed and disabled plaintiff's property;

    c)  §1692f, by unfairly and unconscionably collecting or attempting to collect the debt by its actions described above herein.

<u>**COUNT II**</u> **– Violation of U.C.C.**
**Plaintiff v. All Defendants**

26.     The allegations above are re-alleged and incorporated herein by reference.

27.     "Repossession" of the subject vehicle collateral by Defendant DTL and its agent, PREDATOR, falls within the definition of "consumer goods" contained in 13 Pa. C.S.A. § 9102. The transaction in question was a consumer-goods transaction in that plaintiff owed the obligation primarily for personal, family or household purposes, and the collateral was consumer goods.

4

28.     Defendants violated UCC by committing a breach of the peace in the vehicle's repossession as described herein, 13 Pa. C.S.A. § 9609(b)(2).

29.     These U.C.C. violations caused plaintiff actual damages as described herein, loss of the vehicle, loss of the use of the vehicle, and, in addition, statutory damages under 13 Pa. C.S.A. § 9625 including $14,006.20 in finance charges plus $500.00.

<u>**COUNT III**</u> **– Conversion**
**(Plaintiffs v. All Defendants)**

30.     Plaintiffs incorporate all facts and allegations set forth in this Complaint.

31.     Pursuant to the established business practices established and implemented by all the Defendants, without right or justification, Defendants took possession, dominion and/or control of Plaintiff's vehicle and denied plaintiff use and quiet enjoyment thereof and withheld and refused and refuse to return it.

32.     As a result of the Defendants' misconduct, the Plaintiff was deprived of the use and enjoyment of the subject vehicle, the use and enjoyment of the amount financed, will incur costs and expenses for replacement vehicles, incurred inconveniences and frustration, together with the other damages set forth above and below.

33.     The defendants' individual and collective acts and/or omissions were substantial contributing factors and causes of violations of the duties as set forth in this Count and to plaintiffs' indivisible harm and damages more fully described above and below, and render the defendants joint and severally liable to the Plaintiff.

<u>**COUNT IV**</u> **– Illegal Repossession under DE Title 5 § 2255**
**(Plaintiff v. DTL)**

34.     Plaintiff repeats and realleges all allegations as if set forth at length herein.

35.     Under DE Title 5 § 2255:

(a) If a title loan borrower fails to repay the loan in accordance with the original provisions of the loan or any rollover of the loan, a licensee shall not take possession of the motor vehicle that is used as security for that loan or file suit on the loan until the licensee offers the borrower a workout agreement. Every workout agreement shall require a net reduction of at least 10% of the outstanding and unpaid indebtedness on the loan every month. A borrower shall have at least 10 business days to accept a workout agreement before the licensee takes possession of the motor vehicle.

36.     Defendant DTL failed to offer Plaintiff any workout prior to repossessing her vehicle.

37.     Defendant having breached the aforementioned statutory requirement governing title loans in Delaware, Defendants' repossession of Plaintiff's vehicle was unlawful.

38.     As a result of Defendants' breach, the Plaintiff suffered the damages outlined above and in the following additional ways:

    a)  damaged and/or excessively consumed credit, credit rating and/or reputation;

    b)  loss of the use and/or enjoyment of the vehicle;

    c)  incurred cost of replacement transportation;

    d)  spent time resolving problems created by Defendants' breach;

    e)  incurred other incidental and consequential damages, including inconvenience and frustration.

39.     The Defendant's individual and collective acts and/or omissions were substantial contributing factors and causes of violations of the duties as set forth in this Count and to

Plaintiff's indivisible harm and damages more fully described above and render the Defendants

joint and severally liable to the Plaintiff.

### COUNT V – Illegal Agreement under DE Title 5 § 2252
### (Plaintiff v. DTL)

40.     Plaintiff repeats and realleges all allegations as if set forth at length herein.

41.     Under DE Title 5 § 2252:

No licensee shall make a title loan without providing to the borrower, before the borrower signs the loan agreement, all of the following written disclosures in a conspicuous format:

(1)  "The loan you are considering entering into is strictly for short-term cash, and is not a solution for long-term financial problems."

(2)  "You, as borrower, are not compelled to complete the loan agreement merely because you have received any disclosures."

(3)  "If you sign the title loan agreement, the title loan lender will obtain a security interest in your motor vehicle, and if you fail to meet the obligations of the title loan agreement, the lender can take possession of your motor vehicle and sell it."

(4)  "If the lender takes possession of your motor vehicle, you may lose equity in that vehicle."

(5)  "You have a right to rescind the title loan agreement for any reason, at no cost to you, at any time up to the end of the business day following the day in which the loan proceeds of the title loan were disbursed to you by returning the full amount of the loan proceeds to the title lender."

(6)  "You have the right to receive information about credit counseling services from the Office of the State Bank Commissioner."

(7)  "You may file a complaint with the Office of the State Bank Commissioner if you believe your lender has violated any law regarding your title loan."

42.     Defendant DTL failed to provide the aforesaid disclosures to Plaintiff.

43.     The title loan is therefore null and void as a legal agreement.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests relief as follows:

A.  An award of actual damages for damage caused to the vehicle during towing and storage;

B.  Statutory damages pursuant to 15 U.S.C. § 1692k;

C.  Actual damages pursuant to 15 U.S.C. § 1692k;

D.  An award of Reasonable attorney fees and costs.

E.  An award under the UCC of finance charges, $500, plus 10% of the value of the vehicle for the wrongful repossession;

F.  An award of actual and punitive damages against defendants for conversion of plaintiff's vehicle;

G.  An award of attorney's fees and costs;

H.  Any other relief that is just and appropriate.


Dated: January 17, 2023                    Respectfully Submitted,

                            By: */s/ David T. Crumplar*
                                David T. Crumplar (#5876)
                                Jacobs & Crumplar, P.A.
                                *Of Counsel*
                                750 Shipyard Drive
                                Suite 200
                                Wilmington, DE 19801
                                Tel.: (302) 656-5445
                                Fax: (302) 656-5875
                                davy@jcdelaw.com

                                and
                                    ROBERT P. COCCO, P.C.

8

Pa. Id. No. 61907
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
bob.cocco@phillyconsumerlaw.com
Pro hac vice pending

BENSLEY LAW OFFICES, LLC
BY:     William C. Bensley
Pa. Id. No. 79953
1500 Walnut Street, Suite 900
Philadelphia, PA  19102
267-250-4383
Email: wcbensley@bensleylawoffices.com
Pro hac vice pending

Attorneys for Plaintiff